UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REFINERÍA MADERO TAMAULIPAS, S.A.P.I. DE C.V.

                    Petitioner,

v.

PETRÓLEOS MEXICANOS

                    Respondent.

Case No. 1:26-cv-3953

---

## PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD

Bernardo M. Cremades Román

B. CREMADES Y ASOCIADOS, S.L.
Calle Goya 18, Planta 2
28001 Madrid
Kingdom of Spain
Tel.: +34 914 237 200
www.bcremades.com

*Attorneys for Refinería Madero Tamaulipas, S.A.P.I. de C.V.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................................2

PARTIES ...............................................................................................................................3

JURISDICTION AND VENUE ...........................................................................................4

FACTUAL BACKGROUND.................................................................................................5

A. The Contract Between Refinería Madero and Pemex Tri........................................5

B. The Arbitration...........................................................................................................7

ARGUMENT.........................................................................................................................10

A. Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement...11

B. None of the Limited Grounds to Refuse Recognition and Enforcement Exist ........................12

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agility Public Warehousing Co. v. Supreme Foodservice GmbH,*
    840 F. Supp. 2d 703 (S.D.N.Y. 2011), aff'd, 495 F. App'x 149 (2d Cir. 2012) ...........10, 12

*Banco de Seguros del Estado v. Mut. Marine Offices, Inc.,*
    257 Supp. 2d 681 (S.D.N.Y. 2003) ...............................................................................11

*CC/Devas (Mauritius) Ltd., et. Al v. Antrix Corp. Ltd., et al.*, 605 U.S. 223 (2025)....................5

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.,*
    776 F.3d 126 (2d Cir. 2015) ........................................................................................10

*Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion y Produccion*,
    832 F.3d 92 (2d Cir. 2016) .....................................................................................4, 10, 11

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
    40 F.4th 56 (2d Cir. 2022)...........................................................................................10

*Gomez de Hernandez v. Wells Fargo Advisors, LLC,*
    No. 16 CIV 9922 (LGS), 2017 WL 3088396 (S.D.N.Y. 2017) ..........................................10

MGM Productions Group v. Aeroflot Russian Airlines,
    573 F. Supp. 2d 772 (S.D.N.Y. 2003), aff'd, 91 F. App'x 716 (2d Cir. 2004) ...................12

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,*
    23 F.3d 41 (2d Cir. 1994) ...........................................................................................10

*Scherk v. Alberto-Culver Co.,*
    417 U.S. 506 (1974) ...................................................................................................10

*Telenor Mobile Commc'ns AS v. Storm LLC,*
    584 F.3d 396 (2d Cir. 2009) .....................................................................................11, 12

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997) .......................................................................................11, 12

*Zeiler v. Deitsch,*
    500 F.3d 157 (2d Cir. 2007) ........................................................................................10

**Statutes**

28 U.S.C. §§ 1330, 1391, 1602-1611 ................................................................................ *passim*

9 U.S.C. §§ 201-207, 301, 302, 305 ................................................................................. *passim*

21 U.S.T. 2517 (New York Convention) ............................................................................ *passim*

1438 U.N.T.S. 245 (Panama Convention) .......................................................................... *passim*

Petitioner *Refinería Madero Tamaulipas, S.A.P.I. de C.V.* ("**Refinería Madero**" or "**Petitioner**"), by and through its attorneys, alleges as follows in support of its petition to confirm and enforce a foreign arbitral award (the "**Petition**"), pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (the "**New York Convention**"), the Inter-American Convention on International Commercial Arbitration of January 30, 1975, 1438 U.N.T.S. 245 (the "**Panama Convention**"), and Chapters 2 and 3 of Title 9 of the Federal Arbitration Act (the "**FAA**"). This Petition concerns a foreign arbitral award dated June 30, 2025 (the "**Final Award**"),[1] rendered in the arbitration between Petitioner on the one hand, and *Pemex Transformación Industrial, S.A. de C.V.* ("**Pemex Tri**"), on the other hand (the "**Arbitration**"). As the Final Award indicates, Pemex Tri was formerly known as Pemex Refinacíon. Zamora Decl., Exh. A, ¶ 76, n. 7. On September 11, 2025, Petitioner filed a request for correction of the Award, and on January 30, 2026, the arbitral tribunal (the "**Tribunal**") subsequently issued an addendum (the "**Addendum**"), which corrected certain aspects of the Award.[2] The Addendum was served on Petitioner on March 12, 2026. Zamora Decl., ¶ 17. The Final Award, as amended by the Addendum, is the subject of this Petition.

In March 2025, Pemex Tri was dissolved by operation of Mexican law, with Petróleos Mexicanos ("**Pemex**") assuming all rights and obligations of Pemex Tri. Zamora Decl., ¶ 8, Exh. A, ¶ 76, n. 7. As a result, Pemex is the named respondent in this proceeding and is referred to herein as the "**Respondent**" (Petitioner and Respondent are referred to individually as a "**Party**"

---

[1] A true and correct copy of the Final Award in the original Spanish, accompanied by a certified English translation, is attached as Exhibit A to the Declaration of Rodrigo Zamora Etcharren in Support of Petition to Confirm and Enforce Foreign Arbitral Award ("**Zamora Decl.**").

[2] A true and correct copy of the Addendum in the original Spanish, accompanied by a certified English translation, is attached as Exhibit C to the Zamora Decl.

1

and collectively as the "**Parties**").[3]

The Arbitration, captioned *Refinería Madero Tamaulipas, S.A.P.I. de C.V. vs. PEMEX Transformación Industrial*, was seated in Mexico City, Mexico and conducted under the 2012 Rules of the International Chamber of Commerce ("**ICC Rules**").

## PRELIMINARY STATEMENT

1.    On March 21, 2013, Petitioner and Pemex Refinación entered into the Public Works Contract at Unit Prices and Integrated Price for a Fixed Term No. ROPL00713P ("*Contrato de Obra Pública a Precios Unitarios y Precio Integrado por Tiempo Determinado No. ROPL00713P*") involving the engineering, procurement, supply, installation, construction, testing, and commissioning of a 35-MW TG-8 gas turbogenerator, an HRSG-2 heat recovery unit, and a gas regulation and metering station (the "**Contract**").[4]

2.    On November 18, 2014, Pemex Refinación, along with other subsidiaries of Pemex, were reorganized into Pemex Tri. Zamora Decl., ¶ 8; Exh. A, ¶ 76, n. 7. The agreement establishing Pemex Tri entered into force on November 1, 2015, whereby the latter assumed the rights and obligations of Pemex Refinación, including the Contract. *Id.*

3.    Over the course of the project, the Petitioner and Pemex Tri formalized several amendments to the Contract and extended the termination date on two occasions by way of memoranda of understanding. Zamora Decl., Exh. A, ¶ 79; Exh. E. However, Pemex Tri ultimately determined that it was unable to perform its obligations under the Contract and proceeded with an early termination. Zamora Decl., Exh. A, ¶ 80. Following this termination, on

---

[3] All capitalized terms not specifically defined in this Petition retain their meaning as defined in Zamora Decl., Exh. A.

[4] A true and correct copy of the Contract in the original Spanish, accompanied by a certified English translation of the relevant portions, is attached as Exhibit D to the Zamora Decl.

November 25, 2020, the Petitioner and Pemex Tri entered into a settlement agreement (the "**Settlement Agreement**") to reconcile the outstanding balances between them. *Id.* at ¶ 82. Pemex Tri nevertheless failed to pay the balances acknowledged as due under the Settlement Agreement. *Id.* at ¶¶ 85, 91. Pursuant to the dispute resolution clause in the Contract, on March 25, 2022, Petitioner initiated the Arbitration against Respondent under the ICC Arbitration Rules. *Id.* at ¶ 12.

4.    On July 30, 2025, an arbitral tribunal duly constituted under ICC Rules (the "**Tribunal**") issued the Final Award, ordering Pemex Tri to pay Petitioner US $2,510,867.61 and MXN $29,029,458.50, plus interest. Zamora Decl, Exh. A, ¶ 440. This remained the principal amount due after issuance of the Addendum, with the Addendum correcting and clarifying the calculation of interest, which is detailed below in paragraph 26.  Zamora Decl., Exh. C. Respondent, as the current entity responsible for this debt, has refused to pay the amounts due under the Final Award, as amended by the Addendum. Zamora Decl, ¶ 18. Therefore, Petitioner now seeks to recognize and enforce the Final Award, as amended by the Addendum, in accordance with the New York Convention, Panama Convention and the FAA.

## PARTIES

5.    Petitioner is a corporation organized under the laws of Mexico, with its principal place of business at Juan Racine 112, Piso 10, Colonia Los Morales, Miguel Hidalgo, 11510, Mexico City, Mexico.

6.    As noted above, Pemex Tri, the respondent in the Arbitration, was dissolved as a matter of Mexican law in March 2025, with Pemex assuming all rights and obligations of Pemex Tri. Zamora Decl., ¶ 8, Exh. A, ¶ 76, n. 7. As a result, Pemex became, and is currently, the debtor for the amounts owed pursuant to the Final Award, as amended by the Addendum.

7.    Respondent Pemex is a Mexican state-owned corporation organized under the law of Mexico. It is headquartered at Avenida Marina Nacional No. 329 Interior C 3, Colonia Verónica Anzures, Miguel Hidalgo, 11311, Mexico City, Mexico.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction in this proceeding pursuant to 9 U.S.C. §§ 203, 302, which provide that United States District Courts shall have original jurisdiction over actions and proceedings governed by the New York Convention and the Panama Convention. Both Mexico and the United States are signatories to the New York and Panama Conventions.

9.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that United States District Courts shall have original jurisdiction over any nonjury civil action against a foreign state, as defined in 28 U.S.C. § 1603(a), unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement. Section 1603(a) defines a "foreign state" to include "an agency or instrumentality," as defined in § 1603(b). Respondent is a State-owned entity, wholly owned by Mexico, and is thus an "agency of instrumentality of a foreign state." 28 U.S.C. § 1603(b); *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 98 (2d Cir. 2014).

10.    Under 28 U.S.C. § 1605(a)(6), the Foreign Sovereign Immunities Act ("**FSIA**") provides an arbitration exception to independently confer subject matter jurisdiction to confirm and enforce the Final Award, as amended by the Addendum, against Respondent. Specifically, the "arbitration" exception in 28 U.S.C. § 1605(a)(6) confers jurisdiction in an action "to confirm an award made pursuant to [an agency or instrumentality] agreement to arbitrate" and "governed by a treaty or other international agreement in force for the United States calling for the recognition

4

and enforcement of arbitral awards." These requirements are satisfied here: the Final Award that Petitioner seeks to recognize and enforce is the product of the arbitration agreement between Petitioner and Pemex Refinación, with Respondent assuming all obligations, and it is governed by the New York and Panama Conventions.

11.    The Court has personal jurisdiction over Respondent pursuant to 28 U.S.C. § 1330(b), which authorizes personal jurisdiction over a foreign state (including an agency or instrumentality of a foreign state, such as Respondent) that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608, which governs service on agencies and instrumentalities of a foreign state. Petitioner will serve Respondent in accordance with 28 U.S.C. § 1608.

12.    The Supreme Court has determined that foreign states and their instrumentalities, under the FSIA, do not enjoy additional jurisdictional protections of the Due Process Clause beyond those contained within the FSIA itself. *CC/Devas (Mauritius) Ltd., et. Al v. Antrix Corp. Ltd., et al.*, 605 U.S. 223, 236 (2025). That is, "[p]ersonal jurisdiction exists under § 1330(b) of the FSIA when an immunity exception applies and service is proper." *Id.* at 237. Here, the arbitration exception applies under 28 U.S.C. § 1605(a)(6) and Petitioner will serve Respondent in accordance with 28 U.S.C. § 1608.

13.    Finally, venue in this District is proper pursuant to 9 U.S.C. §§ 204, 301, 302 and 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### A.    The Contract Between Refinería Madero and Pemex Tri

14.    On March 21, 2013, Petitioner and Pemex Refinación entered in the Public Works Contract at Unit Prices and Integrated Price for a Fixed Term No. ROPL00713P ("*Contrato de*

5

*Obra Pública a Precios Unitarios y Precio Integrado por Tiempo Determinado No. ROPL00713P*") (previously defined as the "**Contract**").  Zamora Decl., ¶ 7, Exh. D.

15.    On November 18, 2014, Pemex Refinación, along with other subsidiaries of Pemex, were reorganized into Pemex Tri. Zamora Decl., ¶ 7; Exh. A, ¶ 76, n. 7. The agreement establishing Pemex Tri entered into force on November 1, 2015, whereby the latter assumed the rights and obligations of Pemex Refinación, including the Contract. *Id.*

16.    Pursuant to the Contract, Refinería Madero was engaged to perform work involving the engineering, procurement, supply, installation, construction, testing, and commissioning of a 35-MW TG-8 gas turbogenerator, an HRSG-2 heat recovery unit, and a gas regulation and metering station at the Francisco I Madero Refinery in Ciudad Madero, Tamaulipas, Mexico. Zamora Decl., Exh. D.

17.    Subsequently, the Contract was amended on: (1) December 3, 2014; (2) December 26, 2014; (3) March 5, 2015; (4) September 3, 2015; (5) December 23, 2015; (6) August 4, 2016; (7) October 11, 2016; and (8) December 2, 2016. Zamora Decl., Exh A, at ¶ 77; Exh. E.

18.    On April 8, 2016, the execution of the Contract was temporarily suspended as a result of a budget reduction ordered by the Pemex Tri Board of Directors. Zamora Decl., Exh. A, ¶ 78. Consequently, Petitioner and Pemex Tri signed two memoranda of understanding pursuant to Clauses 12 and 16 of the Contract to extend the termination date of the Contract: (1) the first on November 25, 2016, and (2) the second on February 23, 2017. *Id.* at ¶ 79.

19.    However, due to modifications of the original execution plan of the Contract, Pemex Tri determined that it was unable to execute its obligations under the Contract and accordingly proceeded with early termination pursuant to Subsection III of Clause 15 of the Contract. *Id.* at ¶ 80.

6

20.    On November 25, 2020, in accordance with Clauses 14 and 17 of the Contract, Petitioner and Pemex Tri drew up the Settlement Agreement in which they agreed on a balance in favor of Refinería Madero of USD $2,510,867.61 and MXN $29,029,458.50, both amounts subject to the payment of the corresponding value added tax. *Id.* at ¶ 83. As stated therein, it was concluded that:

> "[REFINERÍA MADERO] *has Balances in Favor in the amounts of USD 2,510,867.61 (Two million five hundred ten thousand eight hundred sixty-seven and 61/100 US dollars) and MXN 29,029,458.50 (Twenty-nine million twenty-nine thousand four hundred fifty-eight and 50/100 Mexican pesos), which are covered by the respective SETTLEMENT estimates, duly signed and approved in this event by both parties; for these Balances in favor of* [REFINERÍA MADERO]*, PEMEX TRANSFORMACIÓN INDUSTRIAL shall proceed to make the corresponding arrangements to make payment under the terms of Clause FOUR.- REMUNERATION of the CONTRACT itself. Id.* at ¶ 82.

21.    Pemex Tri never paid the amount designated by the Settlement Agreement. *Id.* at ¶ 91.

### B.    The Arbitration

22.    On March 25, 2022, Petitioner commenced the Arbitration against Pemex Tri. Zamora Decl, Exh. A, ¶ 12. The Arbitration was governed by the ICC Rules and was seated in Mexico City, Mexico pursuant to the arbitration agreement entered into between Petitioner and Pemex Tri (the "**Arbitration Agreement**") in Clause 34 of the Contract, which provides:

> *This CONTRACT shall be governed by the Federal Laws of the United Mexican States and other provisions in force. In the event of any dispute or disagreement between the parties arising from the interpretation of the clauses of the CONTRACT or from matters arising from its execution, the parties expressly agree to submit to arbitration conducted by the International Chamber of Commerce; the rules applicable to this procedure shall be the International Chamber of Commerce Arbitration Rules in force at the time. The number of arbitrators shall be 3 (three), the language to conduct the arbitration shall be Spanish, the laws applicable to the merits of the controversies or disagreements shall be the Mexican Federal Laws, the seat of the arbitration shall be Mexico City, Federal District, in the United Mexican States.*

*Neither administrative rescission nor early termination of the CONTRACT shall be subject to arbitration.*

*Notwithstanding the foregoing, in the event of a claim or discrepancy of a technical or administrative nature, the CONTRACTOR shall first exhaust the procedure set forth in Clause Twenty-Six, titled "Dispute Prevention and Resolution Mechanisms"; solely in the event that the parties fail to reach an agreement through this procedure or through the concessions referred to in the clause titled "Concession," if it has been chosen, shall the CONTRACTOR shall have the right to refer the matter to the authority set forth in this clause.*

23.   Both Petitioner and Pemex Tri nominated arbitrators who served on the Tribunal, as confirmed by the ICC on May 18, 2022. Zamora Decl, Exh. A, ¶ 27. On July 19, 2022, the ICC confirmed Mr. Victor M. Ruiz Barboza as the president of the Tribunal. *Id.* at ¶ 37.

24.   Petitioner and Pemex Tri both appeared and participated in the Arbitration with the assistance of counsel. *Id.* at ¶¶ 4, 7. Petitioner and Pemex Tri submitted extensive briefs and exhibits throughout the Arbitration, and the Tribunal held a hearing on June 1, 2023. *Id.* at ¶¶ 43, 48, 51-54, 58. Additionally, Petitioner and Pemex Tri submitted post-hearing briefs and declarations of costs. *Id.* at ¶ 62.

25.   The Tribunal rendered the Final Award by majority on June 30, 2025, and made the following rulings:

    i.    declared the disputes between Petitioner and Pemex Tri as arbitrable and admissible;

    ii.    declared that it had jurisdiction to hear the case;

    iii.    ordered Pemex Tri to pay Petitioner USD $2,510,867.61 and MXN $29,029,458.50, in accordance with to the Settlement Agreement;

    iv.    ordered Pemex Tri to pay Petitioner accrued interest in the amount of US $1,357,468.44 + MXN $11,747,829.02 due to non-payment of the amounts owed under the Settlement Agreement, with simple interest continuing to accrue until

8

the total debt is paid, using the following formula: Rate 0.98% x 12 months = 0.1176 x Debt/365 — Interest per day x Days elapsed = Total interest;

  v.     ordered Petitioner and Pemex Tri, once the final balances have been paid to Petitioner, to take steps in accordance with the Settlement Agreement to terminate their relationship;

  vi.    ordered Petitioner and Pemex Tri to pay their own legal costs and to pay for the cost of arbitration in equal parts; and

  vii.   rejected all other claims.

*Id.* ¶ 440.[5]

26.   On January 10, 2026, the Tribunal issued the Addendum, which was delivered to the Parties on March 12, 2026. Zamora Decl., ¶ 17. The Addendum made certain corrections to the Final Award and clarified the interest owed in this case (*i.e.*, corrected the amounts reflected in paragraph 24(iv) above). Specifically, pursuant to the Addendum, the Tribunal ordered Pemex Tri to pay Petitioner accrued interest in the amount of US $1,357,468.44 + MXN $15,694,434.68 due to non-payment of the amounts owed under the Settlement Agreement, with simple interest continuing to accrue until the total debt is paid, using the following formula: Rate 0.98% x 12 months = 0.1176 x Debt/365 = Interest per day x Days elapsed = Total interest. Zamora Decl., Exh. C, ¶ 22(c).

27.   Respondent, as the current debtor under the Final Award, as amended by the Addendum, has failed to pay any of the amounts due as of the date of this filing. Zamora Decl., ¶ 18.

---

[5] The dissenting opinion is attached as Exhibit B to the Zamora Decl.

**ARGUMENT**

28.    In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974), the United States Supreme Court explained that "[t]he goals of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries." The Second Circuit has observed that the Panama Convention was also intended by Congress "to reach the same results as those reached under the New York Convention . . . ." *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994). Accordingly, "the Panama Convention is substantively identical to the New York Convention and [the] authority interpreting one may be applied to the other." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 n.2 (2d Cir. 2022) (*citing Corporación Mexicana*, 832 F.3d at 105).

29.    "[C]onfirmation of an arbitration decision [including under the New York and Panama Conventions] is a 'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Gomez de Hernandez v. Wells Fargo Advisors, LLC*, No. 16 CIV 9922 (LGS), 2017 WL 3088396, at *2 (S.D.N.Y. July 20, 2017) (*quoting Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015); *see also Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation under the [New York] Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."). As such, "[t]he role of a district court in reviewing an arbitral award is narrowly limited." *Agility Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703,

10

710 (S.D.N.Y. 2011), aff'd, 495 F. App'x 149 (2d Cir. 2012); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (explaining that review is very limited "to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Consistent with their purpose of reducing obstacles to confirmation, the New York and Panama Conventions reflect a general "pro-enforcement bias." *Corporación Mexicana*, 832 F.3d at 105, *(citing Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir. 1997).

30.    This Petition should be granted because, as demonstrated below: (i) all statutory conditions for recognition and enforcement are satisfied; and (ii) none of the limited grounds for refusal to confirm exist. *See Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 257 Supp. 2d 681, 685 (S.D.N.Y. 2003).

### A. Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement

31.    This Petition falls within the recognition and enforcement regimes of the New York and Panama Conventions and satisfies the statutory requirements for recognition and enforcement of each.

32.    The FAA incorporates the New York and Panama Conventions into federal law and authorizes federal courts to enforce foreign arbitral awards governed by those Conventions. 9 U.S.C. §§ 201, 301. Article I(1) of the New York Convention states that it "shall apply to the recognition and enforcement of arbitral awards . . . not considered as domestic awards in the State where their recognition or enforcement is sought." Section 202 of the FAA provides that an award is considered non-domestic if it arises out of a legal relationship that is "not entirely between citizens of the United States" or that "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9

U.S.C. § 202*; see Yusuf Ahmed Alghanim*, 126 F.3d at 19. Similarly, an arbitral award falls under the Panama Convention if it "aris[es] out of a legal relationship", which is considered "commercial" and not "entirely between citizens of the United States." 9 U.S.C. §§ 202, 302.

33.    Here, the Final Award, as amended by the Addendum, satisfies the requirements for both the New York Convention and the Panama Convention. The Final Award arose from a commercial legal relationship between Refinería Madero (an entity organized under the laws of Mexico) and Pemex Tri (an entity organized under the laws of Mexico and an agency or instrumentality of Mexico). Given the commercial nature of the relationship and the foreign nationality of both Petitioner and Pemex Tri, and now Respondent, the Final Award falls within the scope of both Conventions.

34.    Finally, the Petition is brought within the three-year statute of limitations provided for by the FAA. *See* 9 U.S.C. § 207; *see also* 9 U.S.C. § 302. The Final Award was rendered on June 30, 2025, and the Addendum was rendered on January 30, 2026. The Petition is therefore well within this three-year period.

### B.    None of the Limited Grounds to Refuse Recognition and Enforcement Exist

35.    The FAA mandates that a court "shall confirm the award" unless one of the grounds for refusal specified in the Convention[s] applies. 9 U.S.C. §§ 207, 302; *see e.g.*, *Telenor Mobile*, 584 F.3d at 405; *In re Oltchim, SA.*, 348 F. Supp. 2d 97, 100 (S.D.N.Y. 2004). However, the party asserting an exception to recognition bears the burden of establishing the grounds for refusal. *MGM Productions Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 776 n.6 (S.D.N.Y. 2003), aff'd, 91 F. App'x 716 (2d Cir. Feb. 9, 2004); *see also Agility Public Warehousing*, 840 F. Supp. 2d at 710 (noting that "the burden of proof required to avoid confirmation is very high.").

36.    None of the grounds for refusing enforcement of an award set forth in Article V of the

New York Convention and/or Article 5 of Panama Convention apply here.

## CONCLUSION

37. For the foregoing reasons, Petitioner respectfully petitions this Court pursuant to the New York Convention, the Panama Convention, and Chapter 2 and 3 of the FAA, to:

    a. Enter an order confirming and enforcing the Final Award, as amended by the Addendum, against Respondent;

    b. Enter judgment in favor of Petitioner and against Respondent in the amount of the Final Award, as amended by the Addendum, with interest as provided therein;

    c. Enter judgment that Respondent is liable to Petitioner for post-judgment interest at the applicable statutory rate;

    d. Enter an order requiring Respondent to pay the costs incurred by Petitioner in connection with this proceeding; and

    e. Award any further relief as may be just and proper.

DATED: May 13, 2026

Respectfully submitted,

By: *s/ Bernardo M. Cremades Román*
Bernardo M. Cremades Román

B. CREMADES Y ASOCIADOS
Goya 18, Planta 2
28001 Madrid, Spain
+34 914 237 200
bcr@bcremades.com

## WORD COUNT CERTIFICATION

I, Bernardo M. Cremades Román, an attorney duly admitted to practice before this Court, hereby certify that this brief complies with the word count limit set forth in Local Rule 7.1(c) of this Court, because it contains 3,992 words (exclusive of the caption, table of contents, table of authorities, signature blocks and certificates). In preparing this certification, I have relied on the word count of the word processing system used to prepare this affirmation.


Dated: May 13, 2026                         B. CREMADES Y ASOCAIDOS, S.L.
      Madrid, Spain

                                              By: /s/ Bernardo M. Cremades Román
                                              Bernardo M. Cremades Román